UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
G&G CLOSED CIRCUIT EVENTS, LLC,          :
                                         :
                    Plaintiff,           :
                                         :         REPORT &
         -against-                       :         RECOMMENDATION
                                         :
OLMEDO PALAGUACHI d/b/a EL ZOCALO and    :         21-CV-3711 (PKC)(MMH)
EL ZOCALO RESTAURANT, INC. d/b/a EL      :
ZOCALO,                                  :
                                         :
                    Defendants.          :
------------------------------------------------------------------ x

**MARCIA M. HENRY**, United States Magistrate Judge:

Plaintiff G&G Closed Circuit Events, LLC sued Defendants Olmedo Palaguachi and El Zocalo Restaurant, Inc. ("El Zocalo") in July 2021, alleging violations of the Communications Act of 1934 ("Communications Act"), as amended, 47 U.S.C. § 605, and the Cable Television Consumer Protection and Competition Act of 1992 ("Cable Television Act"), as amended, 47 U.S.C. § 553. (Compl., ECF No. 1.)[1] Before the Court is Plaintiff's motion for default judgment against El Zocalo, pursuant to Federal Rule of Civil Procedure 55(b).[2] (Mot., ECF No. 9.)[3] The Honorable Pamela K. Chen referred the motion for report and

---

[1] All citations to documents filed on ECF are to the ECF document number and pagination in the ECF header unless otherwise noted.

[2] Plaintiff seeks default judgment only against El Zocalo because its case against Palaguachi is stayed pending Chapter 13 bankruptcy proceedings. (May 27, 2022 Order; May 26, 2022 Status Report, ECF No. 10.) Accordingly, this Report and Recommendation only addresses El Zocalo.

[3] Plaintiff attached to its motion a memorandum of law (ECF No. 9-1) ("Mem.") and (1) an affidavit of Nicholas J. Gagliardi, Plaintiff's president, and related exhibits (ECF No. 9-2) ("Gagliardi Aff."); (2) a declaration by Joseph P. Loughlin, Plaintiff's counsel, and related exhibits (ECF No. 9-3) ("Loughlin Aff."); (3) a proposed default judgment (ECF No. 9-4); and (4) a certificate of service of the motion on El Zocalo (ECF No. 9-5.)

recommendation. For the reasons set forth below, the Court respectfully recommends that Plaintiff's motion should be **granted in part** as follows: (1) a default judgment should be entered against Defendant El Zocalo; (2) Plaintiff should be awarded damages in the total sum of $4,500, which includes: (a) $1,500 in statutory damages and (b) $3,000 in enhanced statutory damages; and (3) Plaintiff should be permitted 30 days from the entry of judgment to seek an award of interest, costs, and attorneys' fees in a separate motion consistent with this Report and Recommendation.

### I.     BACKGROUND

The Complaint alleges the following facts, which are assumed to be true for the purposes of this motion. *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187–90 (2d Cir. 2015) (explaining that courts may "enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true" and that a plaintiff "is entitled to all reasonable inferences").

Plaintiff is a California corporation who licenses broadcasts of sporting events and shows. (Compl. ¶¶ 6, 20.) El Zocalo, a New York business, is the "d/b/a" of El Zocalo Restaurant, located in Elmhurst, New York. (*Id.* ¶¶ 8–9.) Palaguachi is the owner of El Zocalo and supervised operations in El Zocalo, including broadcasts of television programs. (*Id.* ¶¶ 9–13.)

On or about May 1, 2019, Plaintiff entered into a license agreement (the "License Agreement") with Perform Investment Limited ("DAZN"), a London-based events promoter. (Compl. Ex. A, ECF No. 1 at 12–22.) Pursuant to the License Agreement, DAZN granted Plaintiff the "exclusive nationwide commercial distribution (closed-circuit) rights" to the Saul Alvarez v. Daniel Jacobs WBA/WBC/ICF Middleweight Championship Fight Program and its

related fights (the "Program"), telecast nationwide on May 4, 2019, at commercial establishments in New York "and other geographic locales." (*Id.* ¶ 19; Compl. Ex. A, ECF No. 1 at 12, ¶ 1; Compl. Ex. A, ECF No. 1 at 12–21.) Plaintiff paid substantial fees for the exclusive rights to exhibit the Program. (Compl. ¶ 19.)

Plaintiff also signed sublicensing agreements with various commercial entities to grant them limited sublicensing rights "to publicly exhibit the Program within their respective commercial establishments." (Compl. ¶ 20.) The rates were set based on capacity—$875 for 1 to 50 people and $1,250 for 51 to 100 people, based on a rate of $12.50 per person and a $250 activation fee. (Compl. Ex. A, ECF No. 1 at 21–22.) Plaintiff marketed the Program to its commercial customers, and a commercial establishment could only exhibit the Program if they contracted with Plaintiff. (Compl. ¶¶ 21, 23.) If Plaintiff authorized a commercial establishment to telecast the Program, the establishment was provided with specialized equipment or access from a satellite provider to receive the Program's "scrambled" or electronically decoded signal. (*Id.* ¶¶ 24–25.)

According to the Complaint, on Saturday, May 4, 2019, El Zocalo broadcast the Program on six screens with approximately 76 to 82 people in attendance. (*Id.* ¶ 26.) Throughout the evening, El Zocalo sold alcoholic and non-alcoholic beverages to its patrons. (*Id.* ¶ 27.) El Zocalo broadcast the Program without Plaintiff's permission. (*Id.* ¶ 31.) Based on El Zocalo's size, the commercial fee to broadcast the Program lawfully would have been $1,500, but El Zocalo did not pay Plaintiff this fee. (*Id.* ¶ 28.) El Zocalo knew that the Program should not be published or exhibited without authorization but did so "willfully and for

3

purposes of direct and/or indirect commercial advantage and/or private financial gain." (*Id.* ¶¶ 32–33.)

Plaintiff filed this action in July 2021. (*See generally id.*) Plaintiff served El Zocalo with the Complaint and summons and, after El Zocalo failed to appear or answer, requested a certificate of default. (ECF Nos. 6–7.) In September 2021, the Clerk of Court entered a certificate of default against El Zocalo. (ECF No. 8.)

In December 2021, Plaintiff moved for default judgment against El Zocalo, seeking statutory damages, pre- and post-judgment interest, attorneys' fees, and other costs incurred. (Mot., ECF No. 9.) Plaintiff also requests 30 days from the entry of judgment to submit its application for interest, costs, and attorneys' fees. (*Id.* at 3.) Judge Chen referred the motion for report and recommendation. (May 27, 2022 Order.) To date, El Zocalo has failed to appear or to respond to Plaintiff's motion.

## II. STANDARD FOR DEFAULT JUDGMENT

Rule 55 of the Federal Rules of Civil Procedure dictates a two-step process for a party to obtain a default judgment: (1) obtain a default, and (2) move for a default judgment. Fed. R. Civ. P. 55(a)–(b); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Nam v. Ichiba Inc.*, No. 19-CV-1222 (KAM), 2021 WL 878743, at *2 (E.D.N.Y. Mar. 9, 2021). *First*, when a plaintiff shows, such as by affidavit, that a defendant has "failed to plead or otherwise" defend against an action, the Clerk of Court shall enter a default. Fed. R. Civ. P. 55(a). *Second*, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2); *Victoriano*

4

*Gonzalez v. Victoria G's Pizzeria LLC*, No. 19-CV-6996 (DLI)(RER), 2021 WL 6065744, at *5 (E.D.N.Y. Dec. 22, 2021).

A court may enter default judgment if the plaintiff establishes liability as a matter of law when the factual allegations of the complaint are taken as true. *Bricklayers*, 779 F.3d at 187. A court "possesses significant discretion" in granting a motion for default judgment, "including [determining] whether the grounds for default are clearly established . . . ." *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW)(CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *adopted by* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *see also Bricklayers*, 779 F.3d at 187 (reviewing district court's decision to enter default judgment for abuse of discretion).

## III. JURISDICTION AND VENUE

### A. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1331, the Court has original jurisdiction over Plaintiff's claims brought under the Communications Act, 47 U.S.C. § 605 *et seq.*, and the Cable & Television Consumer Protection and Competition Act, 47 U.S.C. § 553 *et seq.*[4]

---

[4] "Federal courts have a duty to inquire into their own subject matter jurisdiction sua sponte," and Article III standing implicates subject matter jurisdiction. *D'Amico Dry Ltd. V. Primera Maritime (Hellas) Ltd.*, 756 F.3d 151, 161 (2d Cir. 2014) (duty to inquire); *see SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (standing). Article III standing is distinct from contractual standing, which addresses whether a party has the right to enforce a contract. *SM Kids*, 963 F.3d at 211. Recently, a court found that Plaintiff lacked statutory standing because it was not a "person aggrieved" under §§ 553 and 605. *G&G Closed Cir. Events, LLC v. Perez*, No. 21-CV-6210 (KPF), 2023 WL 1380314, at *5 (S.D.N.Y. Jan. 31, 2023). Here, no dispute exists as to Plaintiff's contractual standing, and the Court has no duty to *sua sponte* inquire into whether G&G has contractual standing because "the existence of such a [contractual] relationship is not a prerequisite to a court's power to adjudicate a breach-of-contract claim." *SM Kids*, 963 F.3d at 211; *cf. D'Amico*, 756 F.3d at 161; *Perez*, 2023 WL 1380314, at *5 (addressing contractual standing in summary judgment context where parties disputed plaintiff's proprietary rights under the contract).

5

### B. Service of Process

"[B]efore a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). "For a federal court to exercise personal jurisdiction over a defendant, the plaintiff's service of process upon the defendant must have been procedurally proper." *Windward Bora, LLC v. Valencia*, No. 19-CV-4147 (NGG)(RER), 2020 WL 6470293, at *2 (E.D.N.Y. Oct. 16, 2020), *adopted by* 2020 WL 6450286 (E.D.N.Y. Nov. 3, 2020) (quotation marks and citations omitted); *see Sik Gaek, Inc. v. Yogi's II, Inc.*, 682 F. App'x 52, 54 (2d Cir. 2017) (summary order) ("Among other things, the moving party must demonstrate that entry of default is appropriate, which requires a showing that the nonappearing party was effectively served with process." (citing 10A Charles Alan Wright et al., *Fed. Prac. & Proc.* § 2682 (4th ed. 2008))). Here, Plaintiff properly served El Zocalo by delivering two copies of the summons and Complaint to an agent of the New York secretary of state. N.Y. Bus. Corp. L. § 306(b)(1); Fed. R. Civ. P. 4(e)(1); Fed. R. Civ. P. 4(h)(1)(A).

### C. Venue

"[A] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(a)(1). A corporation is deemed to be a resident of "any district" in "a state which has more than one judicial district and in which . . . [that] corporation is subject to personal jurisdiction at the time an action is commenced." 28 U.S.C. § 1391(d). Here, El Zocalo is subject to personal jurisdiction in New York state because headquarters are located in

6

Elmhurst, New York. (Compl., ECF No. 1 ¶¶ 7, 9.) Therefore, venue is proper in this district. *See* 28 U.S.C. § 1391(d); *see also* 28 U.S.C. § 1391(a)(1).

## IV.   **DEFAULT JUDGMENT FACTORS**

In determining whether to grant a default judgment, courts consider the following three factors: (1) whether the default was willful; (2) whether the defendant has a meritorious defense to the claims alleged; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment were denied. *Double Green Produce, Inc. v. F. Supermarket Inc.*, 387 F. Supp. 3d 260, 266 (E.D.N.Y. 2019) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001)).

First, a defendant's unexcused or unexplained failure to answer a complaint and respond to a motion for default judgment adequately establishes willfulness. *See, e.g.*, *United States v. Ireland*, No. 15-CV-3397 (JS)(AYS), 2016 WL 5376248, at *4 (E.D.N.Y. Aug. 8, 2016) (citing *S.E.C. v. McNulty*, 137 F.3d 732, 738–39 (2d Cir. 1998)), *adopted by* 2016 WL 5372801 (E.D.N.Y. Sept. 26, 2016); *Acosta v. DRF Hosp. Mgmt. LLC*, No. CV-18-346 (DRH)(AKT), 2019 WL 1590931, at *6 (E.D.N.Y. Mar. 13, 2019), *adopted by* 2019 WL 1585225 (E.D.N.Y. Apr. 12, 2019) ("When a defendant is continually and 'entirely unresponsive,' defendant's failure to respond is considered willful."). As noted above, Plaintiff properly served the summons and Complaint and its motion for default judgment on El Zocalo in July 2021 and December 2021, respectively. (*See* ECF Nos. 6, 9-5.) Yet El Zocalo still failed to answer or otherwise appear in this action. Therefore, El Zocalo's conduct

demonstrates a willful default. *See Bricklayers*, 779 F.3d at 186; *Green*, 420 F.3d at 109; *Double Green*, 387 F. Supp. 3d at 266; *Ireland*, 2016 WL 5376248, at *4.

Second, without an answer to the complaint, "the Court cannot determine whether a defendant has a meritorious defense and granting a default judgment is favored under those circumstances." *Avedana v. Casa Ofelia's Bakery LLC*, No. 20-CV-2214 (DG)(AKT), 2021 WL 4255361, at *4 (E.D.N.Y. Aug. 19, 2021), *adopted by* 2021 WL 4248857 (E.D.N.Y. Sept. 17, 2021); *see also Ireland*, 2016 WL 5376248, at *4. As noted, El Zocalo has failed to answer or provide any defense to Plaintiff's claims. Thus, this factor favors a default judgment.

Third, Plaintiff will be prejudiced if the motion for default judgment is denied because it has "no alternative legal redress." *United States v. Myers*, 236 F. Supp. 3d 702, 708–09 (E.D.N.Y. 2017). In other words, "[w]ithout the entry of a default judgment, Plaintiff[] would be unable to recover for the claims adequately set forth in the Complaint." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-5721 (MKB)(SJB), 2019 WL 312149, at *4 (E.D.N.Y. Jan. 3, 2019) (quoting *Sola Franchise Corp. v. Solo Salon Studios Inc*., No. 14-CV-946 (JS)(AKT), 2015 WL 1299259, at *15 (E.D.N.Y. Mar. 23, 2015)). Based on the foregoing, entry of default judgment is permissible.

## V.     LIABILITY

The Complaint alleges that El Zocalo violated both 47 U.S.C. §§ 605 and 553 of the Communications Act.

### A.     Section 605 Liability

"No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communications to any person." 47 U.S.C. § 605(a). Section 605(a) applies to the unauthorized interception and exhibition

8

cable communications originating as satellite transmissions. *See, e.g.*, *Joe Hand Promotions, Inc. v. Skaf*, No. 19-CV-3391 (LDH), 2020 WL 3035351, at *3 (E.D.N.Y. Mar. 17, 2020); *G&G Closed Cir. Events, LLC v. Hussain*, No. 20-CV-04280 (KAM)(JRC), 2021 WL 6424602, at *2 (E.D.N.Y. Oct. 13, 2021), *adopted as modified by* 2021 WL 6112514 (E.D.N.Y. Dec. 27, 2021). "[A] plaintiff's well-pleaded allegations state a valid claim against an entity defendant under § 605(a) when, as is the case here, the plaintiff pleads that (1) the plaintiff holds an exclusive license to broadcast the Event at issue.[;] (2) the entity defendant had no right to commercially broadcast the transmission unless it contracted with the plaintiff through a licensing agreement [;] and (3) the entity defendant screened the program despite failing to contract with the plaintiff for authority to do so[.]" *Skaf*, 2020 WL 3035351, at *5 (cleaned up).

Here, Plaintiff sufficiently pleads facts to state a claim that El Zocalo unlawfully intercepted, received, and exhibited the Program willfully and without Plaintiff's authorization. (*See* Compl. ¶¶ 29–45.) First, Plaintiff alleges that it had an exclusive license to broadcast the Program pursuant to the License Agreement. (*Id.*) Second, Plaintiff alleges that El Zocalo did not contract with Plaintiff to commercially broadcast the Program. (*See* Compl. ¶¶ 29–45.) Third, Plaintiff asserts that El Zocalo commercially broadcast the event without Plaintiff's authority. (*See* Compl. ¶¶ 29–45). Further, "where, as here, at least part of the [Program's] transmission was accomplished by satellite, the defendants' interception of the [Program] violates [section] 605(a)." *Skaf*, 2020 WL 3035351, at *3 (cleaned up). Plaintiff alleges that "the Program originated via satellite uplink and was subsequently re-transmitted

9

to cable systems and satellite companies via satellite signal." (Compl. ¶ 24.) Accordingly, Plaintiff adequately alleges a violation of § 605(a). (*Id.*)

### B. Section 553 Liability

"No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). "Whereas section 605 applies to the theft of a radio communication whether or not the radio communication is thereafter sent out over a cable network, section 553 applies to communication thefts from a cable network, whether or not the communication originated as a radio communication." *Hussain*, 2021 WL 6424602, at *2. For the reasons set forth above regarding the § 605(a) violation, Plaintiff plausibly alleges a § 553(a) violation.

Based on the foregoing, the Court respectfully recommends that a default judgment should be entered against El Zocalo.

## VI. DAMAGES

"Once liability is established on a motion for default judgment, the court must ascertain damages with 'reasonable certainty.'" *Windward Bora LLC v. Sterling*, No. 18-CV-1727 (DRH)(SIL), 2018 WL 5839797, at *4 (E.D.N.Y. Nov. 8, 2018), *adopted by* 2018 WL 6706311 (E.D.N.Y. Dec. 19, 2018) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). The Court will evaluate a plaintiff's request for damages using "affidavits, documentary evidence, and evidentiary hearings." *ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417 (DLI)(RER), 2021 WL 8316275, at *4 (E.D.N.Y. Aug. 11, 2021); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace*

*Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (rejecting district court's damages calculation when it simply accepted plaintiff's request without a hearing or analysis).

"'[W]hen a defendant's conduct has violated both Sections 605 and 553, a [plaintiff] is only entitled to only one, non-duplicative recovery.'" *J&J Sports Prods., Inc. v. His & Hers Bar & Lounge*, No. 17-CV-4181 (ADS)(GRB), 2018 WL 4925706, at *3 (E.D.N.Y. Aug. 31, 2018) (quoting *J&J Sports Prods., Inc. v. Alvarez*, No. 07-CV-8852 (RPP)(HBP), 2009 WL 3096074, at *4 (S.D.N.Y. Sept. 25, 2009)), *adopted by* 2018 WL 4922912 (S.D.N.Y. Oct. 9, 2018); *see also Joe Hand Promotions, Inc. v. Wall St. Rest., LLC*, No. 14-CV-4267 (ENV)(RLM), 2015 WL 2084637, at *2 (E.D.N.Y. May 4, 2015) (citing cases). Thus, "where the defendant's liability can be established under both sections, the Second Circuit has made clear that the court should award damages pursuant to section 605." *His & Hers Bar*, 2018 WL 4925706, at *3 (citing cases).

Plaintiff concedes this point by seeking damages solely under 47 U.S.C. § 605—specifically, $4,500 in statutory damages, $13,500 in enhanced statutory damages (*i.e.*, three times the statutory damages), interest, attorneys' fees, and costs. (Mem., ECF No. 9-1 at 4.)

### A.   Statutory Damages

Plaintiff proceeds under 47 U.S.C. § 605(e)(3)(C)(i)(II), which permits statutory damages of "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).

"When determining statutory damages under section 605, courts generally choose between two methods of calculations—a per-customer damage calculation or a flat-sum award." *Skaf*, 2020 WL 3035351, at *7 (quoting *Kingvision Pay-Per-View Ltd. v. Zalazar*, 653 F. Supp. 2d 335, 340 (S.D.N.Y. 2009)) (quotation marks omitted). The first approach

11

calculates a dollar amount per customer by the number of patrons allegedly present during the unauthorized exhibition. *Skaf*, 2020 WL 3035351, at *7. The other approach is typically used when the exact number of patrons present is unknown. *Id.* (applying flat-sum approach and awarding $1,450 in statutory damages—*i.e.*, the licensing fee). Courts in this Circuit have typically awarded statutory damages in the amount of the commercial licensing fee. *See, e.g.*, *Skaf*, 2020 WL 3035351, at *8; *J&J Sports Prods., Inc. v. Dowling*, No. 18-CV-5086 (MKB)(RML), 2019 WL 4727448, at *4 (E.D.N.Y. Sept. 27, 2019); *J&J Sports Prods., Inc. v. Reynolds*, 18-CV-2540 (FB)(ST), 2019 WL 1299408, at *3 n.3 (E.D.N.Y. Jan. 11, 2019) (awarding statutory damages equal to commercial fee and declining to triple the commercial sublicense fee), *adopted by* 2019 WL 1299665 (E.D.N.Y. Mar. 21, 2019).

Plaintiff asks the Court to reject both approaches and instead to award $4,500 in damages, or the midpoint between the statutory damages range of $1,000 to $10,000. (*See* Mem., ECF No. 9-1 at 6.) Plaintiff argues that $4,500 is "in keeping with the purpose of the piracy statutes," and that the approaches outlined above fail to compensate its losses adequately and conflates actual with statutory damages. (*Id.* at 8 (citing out-of-district cases); Gagliardi Aff., ECF No. 9-2 at 2–3.) Yet Plaintiff also acknowledges that the cost for El Zocalo to lawfully broadcast the program would have been $1,500 and that "[i]f the Court were to adhere to the approaches previously used within the Second Circuit, the statutory damages award would be the equivalent of the licensing fee." (Mem., ECF No. 9-1 at 8.) Considering the statutory damages awards in similar cases, this Court should decline Plaintiff's request for $4,500 and instead award $1,500, the licensing fee for El Zocalo to lawfully broadcast the Program. *See, e.g.*, *Skaf*, 2020 WL 3035351, at *8; *Hussain*, 2021 WL 6424602,

12

at *4–5; *G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-CV-7457 (LJL), 2021 WL 4296649, at *3 (S.D.N.Y. Sept. 20, 2021).

For these reasons, the Court respectfully recommends awarding Plaintiff $1,500 in statutory damages.

### B.  Enhanced Damages

Plaintiff also seeks $13,500 in enhanced damages, which permits the Court to increase an award "by an amount not more than $100,000" per violation in any case in which the Court finds that the violation was committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain. 47 U.S.C. § 605(e)(3)(C)(ii). "A presumption of willfulness arises when a program is broadcast without authorization." *Skaf*, 2020 WL 3035351, at *8 (citing *J&J Sports Prods., Inc. v. Morocho*, No. 18-CV-2303 (AMD)(RLM), 2019 WL 1339198, at *6 (E.D.N.Y. Feb. 27, 2019), *adopted by* 2019 WL 1333245 (E.D.N.Y. Mar. 25, 2019)); *see also J&J Sports Prods., Inc. v. Ahuachanan Corp.*, 422 F. Supp. 3d 652, 660 (E.D.N.Y. 2019) (defining willfulness as disregard to and indifference for governing statute's requirements).

In determining whether to award enhanced damages, "courts have considered several factors, including: [1] repeated violations over time, [2] substantial unlawful monetary gains, [3] significant actual damages to the plaintiff, [4] defendant's advertising for the intended broadcast, and [5] defendant's charging a cover charge or charging for food and drinks." *See, e.g.*, *Skaf*, 2020 WL 3035351, at *8–9 (collecting cases) (denying enhanced damages when defendant did not advertise the event or impose a cover charge or food and drink minimum); *Joe Hand Promotions, Inc. v. Shaikh*, No. 19-CV-3500 (MKB)(RLM), 2020 WL 1878165, at *8 (E.D.N.Y. Mar. 4, 2020), *adopted by* 2020 WL 1875471 (E.D.N.Y. Apr. 15, 2020)

13

(collecting cases) (denying enhanced damages where Plaintiff presented no evidence of repeated Communications Act violations, actual damages, defendant's substantial unlawful monetary gains or advertisements, or cover charge, food and drink premiums); *Ahuachanan*, 422 F. Supp. 3d at 667 (awarding enhanced damages of three times actual damages where plaintiff alleged that 25 people had viewed the event but offered no evidence that defendant pirated other events, advertised the broadcast, or charged a cover to view or a premium on food and drinks); *Dowling*, 2019 WL 4727448, at *5 (awarding enhanced damages of double the statutory damages where Plaintiff's evidence showed that defendant charged for admission to the event but did not show repeated violations or advertising for the event).

After reviewing the record, the Court finds that an award of $3,000 in enhanced damages, or double the statutory damages of $1,500, is warranted. Plaintiff presents credible evidence that El Zocalo advertised the event and sold beverages to patrons attending the event. (Loughlin Aff. Ex. 5, ECF No. 9-3 at 46–47.) Photographs of El Zocalo's restaurant taken on the night of the Program reflect a large poster in the front window advertising the Program's broadcast at the restaurant. (*Id.* at 48–49.) During the approximately 30 minutes of Plaintiff's investigator's visit, he was able to purchase at least one beer and observed 76 to 82 patrons watching the Program in the restaurant on multiple TVs. (*Id.* at 46.) Importantly, DAZN's logo was prominently featured on the screen during the Program, which would have put El Zocalo on notice that another party was responsible for broadcasting the event. These facts are consistent with other cases in which courts awarded at least double the statutory damages. *See Ahuachanan*, 422 F. Supp. 3d at 667; *Dowling*, 2019 WL 4727448, at *5.

On the other hand, Plaintiff fails to justify an enhanced damages award of $13,500, or nine times the licensing fee. Plaintiff presents no evidence that El Zocalo repeatedly broadcast

14

events unlawfully (other than the Program), gained substantially from the unlawful broadcast, or that Plaintiff suffered actual damages beyond the lost licensing fee. For example, El Zocalo did not charge a cover fee, and Plaintiff offered no evidence that the restaurant charged anything other than its regular prices for food or drinks.[5] *See Skaf*, 2020 WL 3035351, at *8–9. "Plaintiff disputes the legitimacy of these factors on the grounds that they do not reflect the typical practices of those who impermissibly intercept broadcasts. . . . Even if Plaintiff is correct, such rarity would merely underscore that discretionary enhanced damages should be reserved for particularly severe cases, where the defendant's conduct so departs from the norm that standard statutory damages are inadequate." *J&J Sports Prods., Inc. v. LX Food Grocery Inc.*, No. 15-CV-6505 (NGG)(PK), 2016 WL 6905946, at *5 (E.D.N.Y. Nov. 23, 2016).

For all these reasons, the Court respectfully recommends an enhanced damages award of $3,000, or twice the statutory damages.

### C. Attorneys' Fees, Interest, and Costs

Plaintiff ostensibly seeks recovery of "its attorneys' fees and relevant costs incurred," "pre- and post-judgment interest at the federal statutory rate," and "30 days from the entry of judgment to submit its request for interest, costs, attorneys' fees." (Mot., ECF No. 9 at 2–3 ¶¶ 5–7; Mem., ECF No. 9-1 at 5 n.2.) In its memorandum of law, however, Plaintiff requests "to submit its Motion for costs and attorneys' fees," with no mention of interest. (Mem., ECF No. 9-1 at 10.) Under the Communications Act, "the court . . . shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails."

---

[5] For example, the investigator did not state the price of the beer he ordered, whether anyone else ordered or was served food and drinks, or any of the prices on the menu. Any of these quantitative measures could have allowed the Court to calculate any potential substantial unlawful gains.

15

47 U.S.C. § 605(e)(3)(B)(iii). Therefore, the Court respectfully recommends granting Plaintiff leave to move for interest, costs, and attorneys' fees by separate motion, which motion shall state: (1) the types of interest Plaintiff seeks and the calculations related to same; (2) receipts for any requested costs; (3) contemporaneous timesheets and billing records for any requested attorneys' fees; and (4) legal authority in support of these requests. *Dowling*, 2019 WL 4727448, at *3, 5 (granting default judgment and permitting plaintiff to make requests to recover full costs and reasonable fees by separate motion).

## VII. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff sufficiently establishes El Zocalo's liability under the Communications Act and the Cable Television Act. Accordingly, the Court respectfully recommends that the motion for default judgment at ECF No. 9 should be **granted in part** as follows: (1) a default judgment should be entered against Defendant El Zocalo; (2) Plaintiff should be awarded damages in the total sum of $4,500, which includes: (a) $1,500 in statutory damages and (b) $3,000 in enhanced statutory damages; and (3) Plaintiff should be permitted 30 days from the entry of judgment to seek an award of interest, costs, and attorneys' fees in a separate motion consistent with this Report and Recommendation.

A copy of this Report and Recommendation is being served on Plaintiff via ECF. The Clerk of Court is respectfully recommended to mail a copy of this Report and Recommendation to Defendant El Zocalo at the following address: El Zocalo Restaurant, 40-10 83rd Street, Elmhurst, New York 11373.

Within 14 days of service, any party may serve and file specific written objections to this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Any requests for an extension of time to file objections shall be directed to Judge Chen. If a party

fails to object timely to this Report and Recommendation, it waives any right to further judicial review of this decision. *See Miller v. Brightstar Asia, Ltd.*, 43 F.4th 112, 120 (2d Cir. 2022).

**SO ORDERED.**

Brooklyn, New York
March 15, 2023

 /s/Marcia M. Henry
MARCIA M. HENRY
United States Magistrate Judge