UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
FRANCISCO SURIEL,

                Plaintiff,

     - against -

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, PORT AUTHORITY
POLICE DEPARTMENT, ANDREW
SAMUEL, and BRETT TELESFORD,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-3867 (PKC) (ST)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Francisco Suriel brings this 42 U.S.C. § 1983 lawsuit against the Port Authority of New York and New Jersey for unlawful stop, false arrest, unreasonable force, denial of fair trial, malicious abuse of process, failure to intervene, and various state law claims. Presently before the Court is Plaintiff's motion for spoliation sanctions pursuant to Federal Rule of Civil Procedure 37(e), and a motion for leave to amend the operative complaint to add a claim for malicious prosecution.[1] For the reasons stated herein, Plaintiff's spoliation motion is denied, while his motion for leave to amend the operative complaint is granted.

---

[1] The parties have also filed cross-motions for partial summary judgment. (*See* Dkts. 99, 107.) The Court will issue a separate decision addressing those motions.

1

## BACKGROUND[2]

### I. Factual and Procedural Background

This case arises from an altercation on August 6, 2018, between Plaintiff and two Port Authority Police Department ("PAPD") officers, at the Arrivals roadway of Terminal 8 of John F. Kennedy International Airport ("JFK Airport"). (*See* Plaintiff's Letter Motion for Sanctions ("Pl. Mot."), Dkt. 92, at 1; *see also* Second Am. Compl. ("SAC"), Dkt. 36.) On that day, Plaintiff was working as a driver for Via, a rideshare company, when PAPD officers allegedly approached his car. (SAC, Dkt. 36, ¶¶ 14–15.) Plaintiff further alleges that PAPD Officers Andrew Samuel and Brett Telesford violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by "forcefully pull[ing] [Plaintiff] from his vehicle and assault[ing] him repeatedly, causing him to sustain serious physical injuries." (*Id.* ¶ 18.) Plaintiff was handcuffed and arrested by PAPD officers. (*Id.* ¶ 19.) He was arraigned and released on his own recognizance. (*Id.* ¶ 24.) On or about February 20, 2019, the state criminal charges against Plaintiff were dismissed through an adjournment in contemplation of dismissal ("ACD"). (*Id.* ¶ 25.)

Prior to the filing of this lawsuit, Plaintiff's counsel sent a letter (hereinafter, "Preservation Notice") to Defendant Port Authority of New York and New Jersey ("Port Authority") on August 16, 2018. (*See* Dkt. 92-2.) The Preservation Notice was entitled, "Request to Preserve Evidence," and stated that "[o]n August 06, 2018, [Plaintiff] was involved in an accident" at "Terminal 8 for arrival flights of John F. Kennedy International Airport." (*Id.*) It further requested that the Port Authority "preserve *all* videos/surveillance tapes regarding the accident of the above-named

---

[2] The Court assumes the parties' familiarity with the facts of this case, and only recites those background facts necessary to resolve the instant motion. The facts summarized herein that relate to the spoliation motion are derived from the docket, the motion papers, and any attachments therein.

2

claimant between the hours of 12:00 PM–6:00 PM, on the above-mentioned date and location." (*Id.*) The Preservation Notice also "request[ed] that any photographs, incident reports, or any documentation regarding the investigation of this accident be forwarded" to Plaintiff's counsel. (Dkt. 93-1.)[3]

On July 3, 2019, Plaintiff initiated this action. (Compl., Dkt. 1.) He amended his complaint on February 14, 2020 (*see* First Am. Compl., Dkt. 22), and filed a Second Amended Complaint on December 19, 2020 (*see* SAC, Dkt. 36).

The parties completed discovery in March 2022. (*See* 3/10/2022 Status Report, Dkt. 82.) On March 28, 2022, Plaintiff filed a letter requesting a pre-motion conference ("PMC") as to the present motion for spoliation sanctions. (Pl. PMC Letter, Dkt. 84.) The Court ordered a briefing schedule on the proposed motion. (*See* 5/13/2022 Docket Order.) On June 17, 2022, the parties finished briefing the spoliation motion. (*See* Pl. Mot., Dkt. 92; Defendants' Opposition to Motion for Sanctions ("Defs. Opp."), Dkt. 93; Plaintiff's Reply in Support of Motion for Sanctions ("Pl. Reply"), Dkt. 94; *see also* Dkts. 88, 89.)[4]

Plaintiff's March 28, 2022 letter also requested a PMC to file a partial motion for summary judgment as to his denial-of-fair-trial claim with respect to Defendant Andrew Samuel. (Pl. PMC Letter, Dkt. 84.) Defendants also filed a PMC letter to move for partial summary judgment on several other claims brought by Plaintiff. (*See* Defs. PMC Letter, Dkt. 83.) On April 4, 2022, Plaintiff filed his response to Defendants' PMC Letter, in which he informed the Court that earlier

---

[3] The Court notes that a portion of the August 16, 2018, letter has been cut off by a United States Postal Service certified mail receipt stamp that is affixed to the letter. (*See* Dkt. 92-2.) Therefore, where appropriate, the Court cites to Defendants' version of this letter. (Dkt. 93-1.)

[4] Jeremy Kahn, Joseph Opromalla, John Doe as Administrator of the Estate of Robert Jones, and unidentified John and Jane Doe defendants were terminated from this case on May 24, 2022, pursuant to a stipulation of dismissal. (*See* 5/24/2022 Docket Order.)

that day the United States Supreme Court issued a decision in *Thompson v. Clark*, 142 S. Ct. 1332 (2022), which held that a plaintiff bringing a Section 1983 malicious prosecution claim "need only show that his prosecution ended without a conviction."[5] (Pl. Resp. to Defs. PMC Letter, Dkt. 85, at 2.) Plaintiff explained that in light of *Thompson*, he "intend[ed] to argue the pleadings should be deemed amended to assert a § 1983 malicious prosecution claim, which is otherwise supported by the record." (*Id.*)

After reviewing the parties' respective PMC letters, the Court set a briefing schedule for their anticipated motions. (*See* 5/24/2022 Docket Order.) The parties finished briefing the cross-motions for summary judgment, and Plaintiff's motion to amend, on September 30, 2022. (*See* Dkts. 99–114.)

## LEGAL STANDARDS

### I. Motion for Spoliation Sanctions

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F. 3d 776, 779 (2d Cir. 1999). Federal Rule of Civil Procedure 37(e)(1), as amended in 2015, provides that a court may order measures no greater than necessary to cure the prejudice from spoliation if electronically stored information ("ESI") "that should have been preserved in the anticipation of conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e)(1).

---

[5] As discussed *infra*, prior to *Thompson*, plaintiffs alleging prosecution claims under 42 U.S.C. § 1983 had to demonstrate that the dismissal of their underlying state criminal case was "not inconsistent with [] innocence," *see Lanning v. Glens Falls*, 908 F.3d 19, 27 (2d Cir. 2018) (citations omitted), and ACDs were not considered "termination[s] indicative of innocence," *see Smalls v. Collins*, 10 F.4th 117, 143 (2d Cir. 2021).

> The Rule requires a "three-part inquiry":
>
> The first is to decide if the rule applies at all—that is, if a party failed to take "reasonable steps" to preserve electronically stored information "that should have been preserved in the anticipation or conduct of litigation." Fed. R. Civ. P. 37(e). If so, then the second step is to decide if there has been "prejudice to another party from loss of the information," in which case the Court "may order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Lastly, the third step to consider—regardless of prejudice to any other party—is whether the destroying party "acted with the intent to deprive another party of the information's use in the litigation," in which event a court may consider whether to impose the most severe of measures such as mandatory presumptions or instructions that the lost information was unfavorable or the entry of default judgment.

*Karsch v. Blink Health Ltd.*, No. 17-CIV-3880 (VM) (BCM), 2019 WL 2708125, at *27 (S.D.N.Y. June 20, 2019) (citation omitted). Courts have observed that the 2015 amendment to Rule 37(e) "makes it more difficult for a moving party to obtain sanctions for spoliation of ESI" because it requires "at a minimum, that the court find prejudice, and, in order to impose more extreme sanctions, that it find an intent to deprive." *See Mule v. 3-D Bldg. & Constr. Mgmt. Corp.*, No. 18-CV-1997 (JS) (AKT), 2021 WL 2788432, at *6 (E.D.N.Y. July 2, 2021) (quoting *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363 (ALC) (DF), 2018 WL 1512055, at *8 (S.D.N.Y. Mar. 12, 2018)).

Under Rule 37(e)(1), a party can request sanctions in the form of "monetary sanctions, forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." *Hughes v. City of New York*, No. 18-CV-9380 (MKV), 2021 WL 4295209, at *5 (S.D.N.Y. Sept. 21, 2021) (citation omitted). District courts have "broad discretion in crafting an appropriate sanction for spoliation" of evidence. *A.W.S. v. Southampton Un. Free Sch. Dist.*, No. 19-CV-889 (DRH) (ARL), 2022 WL 1478736, at *4 (E.D.N.Y. Feb. 28, 2022) (citing *Goodyear Tire*, 167 F.3d at 779), *report and recommendation adopted*, 2022 WL 1166422 (E.D.N.Y. Apr.

20, 2022). The party seeking spoliation sanctions has "the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Id.* at *5 (citations and quotation marks omitted).[6]

## II. Motion to Amend Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides that district courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant or deny leave to amend is left to the sound discretion of the district court. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 2003)). "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party [serve as the] touchstones" for a district court considering whether to grant or deny leave to amend. *Barrows v. Forest Labs., Inc.*, 742 F.2d 54, 58 (2d Cir. 1984) (footnote omitted).

## DISCUSSION

### I. Plaintiff's Motion for Spoliation Sanctions Is Denied

Plaintiff's motion for spoliation is based on two separate categories of ESI: (1) video footage from cameras operated by Port Authority that Plaintiff alleges "could have captured relevant video," and (2) cameras operated at Terminal 8 by American Airlines. The Court finds that Plaintiff has failed to make the required showing as to either set of ESI.

---

[6] With respect to the question of whether a party that allowed ESI to be destroyed "acted with [the] intent" to do so, courts "are divided on the level of proof required to show [that] intent, with some courts using a 'preponderance of the evidence' standard and others applying a 'clear and convincing' standard." *EBIN New York, Inc. v. SIC Enterprise, Inc.*, No. 19-CV-1017 (PKC) (TAM), 2022 WL 4451001, *7 (E.D.N.Y. Sept. 23, 2022). For the purposes of this motion, the Court does not need to address this issue because it finds that Port Authority took "reasonable steps" to preserve ESI.

### A.     Video Footage from Cameras Operated by Port Authority

A party's "obligation to preserve evidence arises when [it] has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) (citation omitted); *see also Resnik v. Coulson*, No. 17-CV-676 (PKC) (SMG), 2019 WL 2256762, at *9 (E.D.N.Y. Jan. 4, 2019), ("The duty to preserve [ESI] imposed by Rule 37(e) is based on the common law duty 'to preserve relevant information when litigation is reasonably foreseeable.'") (quoting Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment), *report and recommendation adopted*, 2019 WL 1434051 (E.D.N.Y. Mar. 30, 2019).  A litigant thus "is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, [or] is reasonably likely to be requested during discovery[.]" *Zubulake*, 220 F.R.D. at 217 (quoting *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 72 (S.D.N.Y. 1991)).  A party that has a duty to preserve ESI must exert "reasonable and good faith efforts . . . to identify and, as necessary, notify persons" who possess relevant information. *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 355–56 (S.D.N.Y. 2012), *aff'd*, 2012 WL 1849101 (S.D.N.Y. May 21, 2012) (quotations and citations omitted).

Plaintiff alleges that Port Authority failed to take reasonable steps to preserve ESI on Port Authority's cameras because it "neglected to even check their own cameras for relevant footage[,]" even though Port Authority's airport security manager at JFK, Kim Dickie, "agreed" that Port Authority's cameras "could have captured this incident" between Plaintiff and the officers. (Pl. Reply, Dkt. 94, at 1.)  The Court, however, finds this deposition testimony woefully insufficient to sustain a finding of spoliation.

As an initial matter, the Court finds that the steps taken by Defendant Port Authority after receiving the Preservation Notice to be appropriate.  Testimony from Caroline Ioannou, a Port

Authority employee in its General Counsel's office who is responsible for managing litigation holds, establishes that Port Authority distributed a litigation hold pursuant to Plaintiff's request to the relevant Port Authority departments and requested that the departments hold all relevant materials. (*See* Ioannou Depo., Dkt. 93-2, at 13:4–16; 13:21–14:21.) Ioannou also testified that she distributed the litigation hold in accordance with "a standard list of custodians [for] every litigation hold." (*Id.* at 67:22–25; 70:6–11.) Ionnaou did not send the notice to any specific members of PAPD because she was told by PAPD that it "didn't have relevant material" in response to the litigation hold and "there was no evidence to preserve" from PAPD. (*Id.* at 47:5–25; 71:13–72:4.) The Court finds based on this testimony that Port Authority properly followed its standard procedure for dealing with requests to preserve documents for potential litigation.

Moreover, the Court finds that Port Authority's decision not to review footage from its three external cameras at Terminal 8 was not a dereliction of its duty to preserve. During her deposition, Dickie testified that Port Authority's three external cameras at Terminal 8 "are located on the upper roadway," which is the "departures" level. (Dickie Depo., Dkt. 93-3, at 14:9–17.) Latching onto the fact that Port Authority's cameras for the Terminal 8 roadway had "pan-and-tilt" capabilities, Plaintiff argues that these cameras "could have captured this incident," which occurred at the "arrivals area" on the lower roadway. (Pl. Reply, Dkt. 94, at 1.) Yet, in response to a hypothetical scenario from Plaintiff's counsel about whether one particular camera could have "be[en] moved in a manner which []captures events that are taking place on the lower [or arrival] roadway," Dickie responded that the view from this "camera would be blocked by the roadway to capture any further images" and that "there would be very limited [view] because [of] the structure of the roadway[.]" (Dickie Depo., Dkt. 93-3, at 17:13–25.) In light of this testimony from Dickie,

8

the Court finds Defendant Port Authority's decision not to review footage from these cameras was not a failure to take "reasonable steps."[7]

### B. Video Footage from Cameras Operated by American Airlines

The Court further finds that Port Authority's decision not to inform American Airlines of the Preservation Notice does not constitute a failure to take "reasonable steps" to preserve ESI. Plaintiff argues that Defendants "should have notified American Airlines" of the preservation hold, and he notes that American Airlines "routinely" made its footage available to Port Authority and tended to cooperate with Port Authority when requests for footage were made such that Port Authority was effectively in control of the footage. (*See* Pl. Mot., Dkt. 92, at 3 n.1, 4.)[8]

However, Plaintiff ignores the key issue: whether Port Authority had *control* over the American Airlines camera footage. "Spoliation occurs when a party '*having control over*' evidence fails to preserve it." *Lekomtsev v. City of New York*, No. 16-CV-4530 (RPK) (ST), 2020 WL 5878258, at *3 (E.D.N.Y. Oct. 2, 2020) (quoting *Klipsch Grp., Inc. v. ePRO ECommerce Ltd.*, 880 F.3d 620, 628 (2d Cir. 2018)) (emphasis added). Control over the documents is foundational

---

[7] Plaintiff further argues for spoliation sanctions based on his counsel's observations during a visit to Terminal 8, which purportedly "revealed a score of cameras that could have potentially captured portions of the disputed events in this case." (Pl. Mot., Dkt. 92, at 2.) However, Plaintiff has provided no evidence that these cameras were operated by Port Authority or that they were present at Terminal 8 on August 16, 2018. The Court is unwilling to speculate as to what footage could or might have been captured on random cameras identified by Plaintiff's counsel years after the fact. *See Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 408 (S.D.N.Y. 2015) ("Where a party seeks sanctions based on the spoliation of evidence, it must establish 'that the sought-after evidence actually existed and was destroyed.'") (quoting *Farella v. City of N.Y.*, No 05-CV-5711 (NRB), 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007)).

[8] As noted above, the Court finds that Defendant Port Authority followed its standard practices in response to Plaintiff's "Preservation Notice." Caroline Ionnau testified that she typically does not contact American Airlines when issuing a preservation notice related to incidents that occurred at Terminal 8. (Ioannou Depo., Dkt. 93-2, at 40:15–41:3.) Therefore, her decision not to do so in this instance was not a departure from the Port Authority's standard practice.

to a determination that a party had a duty to preserve certain documents. "A party is in control of any documents in the possession of a third party if that third party is contractually obligated to make them available." *Mazzei v. Money Store*, No. 01-CV-5694 (JGK) (RLE), 2014 WL 3610894, at *3 (S.D.N.Y. July 21, 2014) (citations omitted); *see also Lekomtsev*, 2020 WL 5878258, at *3 ("A party has an obligation to preserve evidence *within its control* that attaches when the party knows, or reasonably should know, that the evidence is relevant to litigation or may be relevant to future litigation.") (citing *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)) (emphasis added).

Here, Bob Davis, a global security investigator for the corporate security department of American Airlines, testified during his deposition that there is no formal agreement requiring American Airlines to comply with requests from Port Authority for video footage from American Airlines' cameras. (Davis Depo., Dkt. 93-4, at 13:10–20.) He further testified that American Airlines "could refuse" a request for video footage from Port Authority (or PAPD) "if there is no subpoena" involved. (*Id.*) Because Plaintiff has not adduced any evidence of a "contractual[] obligation" on American Airlines to produce ESI in its possession to Port Authority, *see Mazzei,* 2014 WL 3610894, at *3, the Court does not find that Port Authority was "in control" of the subject video camera footage.[9]

In his reply brief, Plaintiff addresses for the first time this issue of control by arguing that Port Authority had the "practical ability to possess" the footage of American Airlines' security

---

[9] Plaintiff's reliance on *Hughes v. City of New York* is misguided because the district court in that case ordered spoliation sanctions when photographs taken by the defendant New York City Police Department ("NYPD") officer on an NYPD-issued cell phone were deleted ten days after the New York City Law Department should have put a "litigation hold" on potentially relevant evidence. *See Hughes v. City of New York*, No. 18-CV-9380 (MKV), 2021 WL 4295209, at *10, *12 (S.D.N.Y. Sept. 21, 2021). In other words, control over the relevant ESI was never at issue in *Hughes.*

10

camera. Citing *GenOn Mid-Atl., LLC v. Stone & Webster, Inc.*, Plaintiff asserts that he only needs to establish that Port Authority "had *either* the legal right or the practical ability to obtain [American Airlines'] materials." (Pl. Reply, Dkt. 94, at 2 (quoting *GenOn*, 282 F.R.D. at 355.) Plaintiff further argues that his position is supported by the Second Circuit's decision in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, which held that "if a party has access and the practical ability to possess documents not available to the party seeking them, production may be required." (*Id.* (quoting *Shcherbakovskiy*, 490 F.3d 130, 138 (2d Cir. 2007).)[10] Yet, courts have generally applied this "practical ability" theory of control only to third parties that are service providers or custodians of the litigating party's documents. *See, e.g.*, *GenOn*, 282 F.R.D. at 355–56 (finding plaintiff's duty to preserve extended to the national litigation consulting firm that plaintiff had hired to conduct an audit of defendant in connection with a construction contract between the parties); *Mazzei*, 2014 WL 3610894, at *1, *3–4 (finding defendant mortgage lender had practical ability to obtain its own data related to foreclosures and bankruptcies from third-party service provider where that data was stored on an electronic database created by that third party). Here, because American Airlines was not a third-party service provider that was hired specifically to handle documents or information on behalf of Port Authority, the Court does not find that Port Authority had "practical ability" to obtain the video footage.

The Court's analysis of Port Authority's "practical ability"—or lack thereof—is further informed by the fact that the cases in which courts found that a litigant had "practical ability" to

---

[10] The parties quibble over their conflicting interpretations of the Second Circuit's decision in *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, with each side suggesting that the case supports their position on the present motion. (*See* Defs. Opp., Dkt. 93, at 1; Pl. Reply, Dkt. 94, at 2–3.) But the Court finds that the facts of *Shcherbakovskiy*—in which the plaintiff claimed that he "had no access" to the documents of a third party of which he was a minority shareholder (because Russian law and a confidentiality agreement forbade him from producing such documents)—are too distinct from this dispute to be binding or even persuasive authority. *See* 490 F.3d at 134.

11

control evidence held by a third party often involved a contractual provision that illustrated that "practical ability" to control the evidence.  For example, in *Mazzei v. Money Store*, the court explained that an agreement giving the defendant "the right to request any 'nonpublic personal information' collected by [the third party] and a right to have the information returned to them upon termination" of that agreement "helps establish that [defendant] had a practical ability to obtain the information."  *Mazzei*, 2014 WL 3610894, at *1, *3; *see also SEC v. Strauss*, No. 09-CV-4150 (RMB) (HBP), 2009 WL 3459204 (S.D.N.Y. Oct. 28, 2009) ("[A]n agreement with a third-party possessor granting a party access to documents, along with an actual mechanism for getting the documents, gives that party the 'practical ability to obtain' the documents and so is sufficient to establish that party's control.") (citation omitted).  Yet, Davis from American Airlines testified in this case that there is no formal agreement governing American Airlines' obligations with respect to requests for security video footage from Port Authority or from PAPD.  (Davis Depo., Dkt. 93-4, at 13:14–20.)  The absence of a formal agreement between Port Authority and American Airlines about sharing video footage from Terminal 8, further undermines Plaintiff's argument that Port Authority had "practical ability" to obtain such footage.[11]

\* \* \*

---

[11] The Court also notes that in *Shcherbakovskiy*, the decision on which Plaintiff heavily relies, the Second Circuit held only that "if a party has access and the practical ability to possess documents not available to the party seeking them, production *may* be required."  490 F.3d at 138 (emphasis added).  Thus, even where a litigant has a practical ability to obtain evidence from a third party, it is not necessarily required to do so, which, in turn, undercuts an inference that a litigant's failure to obtain third-party evidence demonstrates the requisite bad intent, *i.e.*, "the intent to deprive another party of the information's use in the litigation," *see* Fed. R. Civ. P. 37(e)(2), to support the imposition of spoliation sanctions.

Therefore, the Court finds that Port Authority did not spoliate any of the requested airport video footage, and denies Plaintiff's motion for spoliation sanctions as to both footage from cameras operated by Port Authority and footage from cameras operated by American Airlines.[12]

## II. Plaintiff's Motion to Amend is Granted

To bring a Fourth Amendment claim under 42 U.S.C. § 1983 for malicious prosecution, a plaintiff must show, *inter alia*, that there was a favorable termination of the underlying criminal case against him. *See McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2019) (explaining the roots of "[m]alicious prosecution's favorable-termination requirement") (citing *Heck v. Humphrey*, 512 U.S. 477, 484–85 (1994)). When Plaintiff initiated this case in 2019, the Second Circuit's precedent defined this "favorable termination" requirement for a malicious prosecution claim as an affirmative indication of plaintiff's innocence, not merely that the prosecution ended without conviction. *See Lanning v. Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018); *see also Smalls v. Collins*, 10 F.4th 117, 143 (2d Cir. 2021) ("[I]t is well-settled that acceptance of an ACD bars a malicious-prosecution claim because it leaves the question of innocence or guilt unanswered and is thus not a termination indicative of innocence.") (citations omitted).

However, on April 4, 2022, the Supreme Court held in *Thompson v. Clark* that "a Fourth Amendment claim under [42 U.S.C.] § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022). Instead, a plaintiff "need only show the criminal prosecution ended without a conviction." *Id.* In so holding, *Thompson*

---

[12] Because the Court finds that Plaintiff has failed to meet its burden to show Defendants failed to take "reasonable steps" to preserve ESI "that should have been preserved in the anticipation or conduct of litigation," Fed. R. Civ. P. 37(e), it need not address whether Plaintiff was prejudiced or whether Defendants acted with deliberate intent.

expressly rejected the Second Circuit's definition of "favorable termination." *Id.* at 1336 (reversing the Second Circuit's judgment, which "adhered to its precedent in *Lanning*"); *see also Perez v. City of New York*, No. 20-CV-1359 (LJL), 2022 WL 4236338, at *14 (E.D.N.Y. Sept. 14, 2022) ("In *Thompson*, however, the Supreme Court explicitly overruled *Lanning*[.]"); *Fishman v. City of New Rochelle*, No. 19-CV-265 (NSR), 2023 WL 143873, at *9 (S.D.N.Y. Feb. 1, 2023) (recognizing that *Thompson* abrogated *Smalls*). Given this intervening decision in *Thompson* that overturns prevailing Second Circuit precedent, the Court finds good cause to grant Plaintiff leave to amend his claim to add a Section 1983 claim for malicious prosecution.

Defendants assert that Plaintiff engaged in undue delay in bringing his motion to amend. (Defendants' Opposition to Plaintiff's Motion to Amend ("Defs. Opp. Mot. Amend") Dkt. 103, at 8–9.) This argument lacks merit, as Plaintiff expressed his intent to add a malicious prosecution claim in his PMC letter the very day the Supreme Court issued *Thompson*. (Pl. Resp. to Defs. PMC Letter, Dkt. 85, at 2.) Thereafter, Plaintiff filed his motion to amend in accordance with the Court's briefing schedule. The Court not only finds that there was no undue delay, but that Plaintiff could not have possibly expressed his intent to file a motion to amend any earlier.

The Court also does not credit Defendants' argument that they would be "substantially prejudiced" by the amendment because they conducted "virtually no discovery on this [malicious prosecution] claim." (*See* Defs. Opp. Mot. Amend, Dkt. 103, at 9.) Courts have recognized that a malicious prosecution claim under Section 1983 is similar to a claim for denial of fair trial based on the fabrication of information. *See Mortimer v. Wilson*, No. 15-CIV-7186 (KPF), 2020 WL 3791892, at *14 (S.D.N.Y. July 7, 2020) (citing *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). The primary difference is that showing the defendant acted with "probable cause can be a complete defense for a malicious prosecution claim, [although] the same

14

is not true for a fair trial claim." *See id.* at *14 n.11 (citing *Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017)). Moreover, the Court has serious doubts that any additional discovery is needed because Plaintiff's claims "involve[] the same sets of facts" and the parties have already addressed the merits of the fair trial claim in summary judgment briefing. *See Rodriguez v. City of New York*, 594 F. Supp. 3d, 534, 546 (E.D.N.Y. 2022).[13] Therefore, the Court concludes allowing Plaintiff to add a malicious prosecution claim will not result in substantial—if any—prejudice to Defendants.

Finally, Defendants note that "Plaintiff has not submitted a proposed complaint in support of his motion." (Defs. Opp. Mot. Amend, Dkt. 103, at 9.) Some courts in this Circuit have observed that a "[f]ailure to include a proposed amended complaint with the motion to amend the complaint indicates a lack of good faith." *Jericho Grp. Ltd. v. Mid-Town Dev. Corp.*, No. 14-CV-239 (DLI) (VMS), 2015 WL 6680213, at *3 (E.D.N.Y. Nov. 2, 2015) (citing *State Trading Corp. of India v. Assuranceforenigen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990)). However, the Second Circuit has noted that the filing of a proposed amended complaint with the motion to amend is "not required," even though it could indicate a "lack of diligence and good faith." *State Trading Corp of India*, 921 F.2d at 418 (citations omitted). Here, although the Court views the failure to include a proposed amended complaint with his motion as a "lack of diligence" by Plaintiff's counsel, the Court does not find that Plaintiff's decision seeking to amend his complaint to add a malicious prosecution claim that was foreclosed before the Supreme Court's decision in *Thompson*

---

[13] To the extent that Defendants genuinely believe that further discovery is necessary, they may present their case for *limited* reopening of discovery to the Honorable Steven L. Tiscione. Any application for reopening discovery must be submitted to Judge Tiscione in accordance with his Individual Rules and Practices.

lacked good faith. For these reasons, Plaintiff's motion to amend is granted. Plaintiff is directed to file his Amended Complaint within fourteen (14) days of this Order.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for spoliation sanctions is denied. The Court further grants Plaintiff's motion to amend to add the Section 1983 claim for malicious prosecution. Within fourteen (14) days of this Order, Plaintiff shall amend his complaint consistent with this Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2023
       Brooklyn, New York